IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LADONNA MARIE SIAR WUJCIK,

    Plaintiff,

v.                                                                                                                      No. 13-cv-0335 JCH/SMV

CAROLYN W. COLVIN, Acting Commissioner of
Social Security Administration,

    Defendant.

**MAGISTRATE JUDGE'S
PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before me on Plaintiff's Motion to Reverse and Remand Commissioner's Administrative Decision [Doc. 18] and the Memorandum in Support of the Motion [Doc. 19] (collectively, "Motion"), filed on November 6, 2013. The Commissioner responded on January 9, 2014. [Doc. 24]. Plaintiff replied on January 13, 2014. [Doc. 25]. The Court referred the matter to the undersigned for findings and a recommended disposition. [Doc. 21]. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the ALJ impermissibly rejected the opinions of two treating physicians. Therefore, the Motion should be granted and the case remanded for further proceedings consistent with this opinion. *See* 42 U.S.C. § 405(g) (sentence four).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### I.   Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 405.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity;" *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy,

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## II. Procedural Background

Plaintiff applied for supplemental security income ("SSI") on November 15, 2010, and for a period of disability and disability insurance ("SSDI") benefits on February 3, 2011. Tr. 25. In both applications, Plaintiff alleged a disability onset date of February 26, 2010. *Id.* Plaintiff met the insured status requirements of the Social Security Act through March 30, 2010, and thus, she had to establish that she was disabled between February 26 and March 30, 2010, to qualify for SSDI.[3]  *See* Tr. 27.

Plaintiff's claims were denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an ALJ. *Id.* ALJ Kathleen Mucerino held a hearing on June 6, 2012. *Id.* ALJ Mucerino conducted the hearing from Phoenix, Arizona. *Id.* Plaintiff appeared at the hearing with an attorney.[4]  Tr. 25, 43. The ALJ took testimony from Plaintiff and from an impartial vocational expert ("VE"), Kathy Atha, who also appeared in person. Tr. 41–77 (hearing transcript); *see generally* Tr. 198 (résumé of VE).

The ALJ issued her unfavorable decision on June 26, 2012. Tr. 25–35. At step one, she found that Plaintiff had not engaged in substantial, gainful activity since February 26, 2010, the alleged onset date. Tr. 27. Next, at step two, she found that Plaintiff suffered from the

---

[3] There is no similar time constraint on her application for SSI because SSI is a need-based program that does not account for insured status based on past earnings. *See* 20 C.F.R. § 416.202.

[4] The transcript of the hearing indicates that Plaintiff was represented at the hearing by an attorney named "Ms. Deloma." Tr. 43, 44, 45. However, the appointment-of-representative forms in the record indicate that Plaintiff was represented at the administrative level by attorneys Max Ortega and Rebecca Gonzales of the law firm of Binder and Binder. Tr. 79, 148. Before this Court, Plaintiff is represented by Eddy Pierre Pierre of Binder and Binder and local counsel Bryan Wade Thompson.

following severe impairments: "fibromyalgia with chronic pain in her neck and low back; liver problems; lumbar degenerative disc disease; asthma; and osteoarthritis, status post total replacement of knees bilaterally[.]"[5]  *Id.*  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 28–30.

Because none of Plaintiff's impairments met a Listing, the ALJ went on to assess Plaintiff's RFC.  Tr. 30–34.

> [Plaintiff] has the [RFC] to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except: lift and carry 20 pounds occasionally, 10 pounds frequently; sit for about 6 hours out of an 8-hour day; stand and walk for about 6 hours out of [an] 8-hour day; only occasionally reach in all direction[s] with right arm, left arm has no limitations; cannot kneel or crawl; she should avoid concentrated exposure to temperature extremes and humidity; she should avoid concentrated exposure to heights and moving machinery; occasionally push, pull, bend, and stoop; she cannot climb ladders, ropes, or scaffolds; and she must avoid concentrated exposure to dusts, fumes, gases, and other pulmonary irritants.

Tr. 30.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a retail sales clerk and as an appointment setter.  Tr. 34.  Ultimately, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act and denied the claims.  Tr. 35.  The Appeals Council denied Plaintiff's request for review on February 1, 2013.  Tr. 1−3.  Plaintiff filed the instant action on April 9, 2013.  [Doc. 1].

As an initial matter, I note that Plaintiff was required to file her action in federal court within 60 days after notice of the Appeals Council's decision was mailed to her, *see* 42 U.S.C.

---

[5] The ALJ also found that Plaintiff suffers from obesity and bipolar disorder, but she found that neither was severe at step two.  Tr. 27–28.  Plaintiff does not challenge these findings.

§ 405(g), plus an additional five days for mailing, 20 C.F.R. § 422.210(c). The Appeals Council's decision was mailed to Plaintiff on February 1, 2013. Tr. 1–3. Adding five days for mailing, she had 65 days, or until Monday, April 8, 2013, to initiate her action in this Court. She did not file her action until Tuesday, April 9, 2013. [Doc. 1]. However, the time limit in § 405(g) represents a statute of limitations, which is waivable. *Matthews v. Eldridge*, 424 U.S. 319, 328 n.9 (1976). It is not jurisdictional. *Id.* Because the Commissioner has not raised the timeliness issue, [Docs. 8, 24], she has waived it. Thus, I will review the Motion on its merits.

### III.    Analysis

Plaintiff raises two arguments in favor of remand. The first is that the ALJ failed to follow the treating physician rule by rejecting the opinions of two treating physicians because they were not consistent with the record. I agree. The evidence cited by the ALJ as showing such inconsistency either (1) is not actually inconsistent with the treating physician's opinions or (2) amounts to a mere scintilla of support. The ALJ improperly rejected the only physician opinions in the record—which were consistent with each other—in favor of her own assessment of the evidence.

Plaintiff's second argument is that the ALJ failed to properly evaluate her credibility. I find no error in the ALJ's credibility analysis.

#### A. The ALJ erred in rejecting the treating physicians' opinions.

The ALJ in this case rejected similar opinions from two of Plaintiff's treating physicians in favor of her own assessment of the evidence. *See* Tr. 30–34. She gave no weight to the opinion of Plaintiff's treating rheumatologist, Dr. Mahadevan, because she found that

6

Dr. Mahadevan's opinion was inconsistent with the other evidence of record. Tr. 32. Specifically, the ALJ found that the opinion was inconsistent with Plaintiff's stopping her fibromyalgia medication without increased symptoms. *Id.* Further, the ALJ noted that Plaintiff's knees were "stable" after surgery and thus required no limitation in walking or standing. *Id.*

The ALJ also gave no weight to the opinion of Plaintiff's primary care physician, Dr. Arnecke. Tr. 32–33. Although the ALJ acknowledged that Dr. Arnecke's opinion was consistent with Dr. Mahadevan's opinion, the ALJ rejected Dr. Arnecke's opinion because she found that it was inconsistent with the other evidence of record. Tr. 33. For example, the ALJ found that Plaintiff did not have continued degeneration in her knees and she found that there was no evidence of repeated swelling "that would warrant the level of limitation opined." *Id.* After noting that when Dr. Arnecke drafted her opinion she had been treating Plaintiff for only five months, the ALJ found that Dr. Arnecke's opinion was "likely based more on [Plaintiff's] subjective statements than objective observations made in the course of treating her impairments for a significant period." *Id.*

Finally, the ALJ's decision suggests that she may have rejected the doctors' opinions because they were based, at least in part, on Plaintiff's subjective complaints. *See* Tr. 32–33 (finding that the opinions were inconsistent with the "objective" medical evidence of record and finding that each doctor, in forming her opinion, relied on Plaintiff's subjective complaints). For example, the ALJ highlighted a letter by Dr. Mahadevan, which explained that Plaintiff's symptoms of pain and fatigue could not be objectively measured. Tr. 32. Also, the ALJ

7

rejected Dr. Arnecke's opinion, at least in part, because it was "likely based more on . . . subjective statements than objective observations . . . ." Tr. 33.  Indeed, it appears that the Commissioner read the decision the same way.  *See* [Doc. 24] at 6–7 (defending the ALJ's rejection of the opinions based on a lack of objective medical evidentiary support).

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record.  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).  This is known as the "treating physician rule." *Langley*, 373 F.3d at 1119.  The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight.  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

Treating physician opinions—in order to receive controlling weight—must be both supported by medical evidence and consistent with the record.  If not, the opinions may not merit controlling weight but still must be given deference and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every factor is applicable in every case, nor should all six factors be seen as absolutely necessary. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two steps. Initially, the ALJ must find that the opinion (a) is not supported by medical evidence and/or (b) is not consistent with the record. Next, the ALJ must still give deference to the opinion and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two steps must be supported by substantial evidence.

Here, Plaintiff argues that the opinions of her treating physicians were entitled to controlling weight and that the ALJ erred in rejecting them. [Doc. 19] at 16–20. I agree. The medical evidence identified by the ALJ as inconsistent with Dr. Mahadevan's and Dr. Arnecke's opinions does not constitute substantial evidence to deny controlling weight to their opinions. The evidence that she cites either (1) is not inconsistent with the treating physician's opinions, or (2) amounts to a mere scintilla of support. Finally, to the extent that the ALJ relied on a lack of *objective* medical support for the doctors' opinions, her decision is not supported by substantial evidence because Plaintiff suffers from fibromyalgia which does not require objective support. Because the ALJ erred at the initial step of the treating physician

rule—regarding supporting medical evidence and consistency with the record—there is no need to proceed to the next step and its corresponding factors.

First, the evidence that Plaintiff's knees were "stable" after her surgeries and that she did not have "continued degeneration" or "repeated swelling" of her knees, Tr. 32–33, is not at all *in*consistent with Dr. Mahadevan's and Dr. Arnecke's opinions, much less does it constitute substantial evidence that the *record* is inconsistent with their opinions. Dr. Mahadevan and Dr. Arnecke treated more than Plaintiff's knees, *see* Tr. 748–53, 1095–1102, and Plaintiff's knees are the not her only problem. As the ALJ found at step two, Plaintiff suffers from multiple medically determinable impairments that significantly impair her ability to perform basic work activities, Tr. 26, including fibromyalgia with chronic pain in her neck and low back, liver problems, lumbar degenerative disc disease, asthma, and osteoarthritis, Tr. 27. Moreover, Dr. Mahadevan and Dr. Arnecke were the only physicians of record who opined as to Plaintiff's functional limitations, and their opinions were consistent with each other.

Second, the ALJ's conclusion that Plaintiff stopped her fibromyalgia medications without increased symptoms amounts, at best, to a mere scintilla of supporting evidence. The ALJ explained that:

> [T]he evidence shows that [Plaintiff] did not need medication for her fibromyalgia as there are records in the file showing she stopped her medications without increased symptoms. As such, the limitations from Dr. Mahadevan are not consistent with the record because [Plaintiff] did not require consistent treatment for her allegedly disabling fibromyalgia pain symptoms. Thus, the undersigned gives no weight to the opinions of Dr. Mahadevan . . . as the limitations given are not supported by or consistent with the objective medical evidence of record.

10

Tr. 32.  According to the Commissioner, the ALJ was relying on a note by Dr. Zeenat Ara of July 2011, indicating that Plaintiff "was doing much better" since stopping Savella and Lyrica, medications for fibromyalgia.  [Doc. 24] at 5 (citing Tr. 701).  Additionally, in reporting her current medication list sometime after October 5, 2011, Plaintiff did not include Savella or Lyrica.  Tr. 305.  There is substantial evidence to support a finding that Plaintiff had stopped Savella and Lyrica, but the ALJ went much further.  Apparently, based on the fact that Plaintiff had stopped these two medications, the ALJ concluded that Plaintiff did not require "consistent treatment" for "fibromyalgia pain."  Tr. 32.  The status of the Savella and Lyrica does not amount to substantial evidence that Plaintiff did not require consistent treatment for fibromyalgia.  Accordingly, the ALJ's reasons for rejecting Dr. Mahadevan's opinion are not supported by substantial evidence.

Finally, "no objective test exists for proving fibromyalgia."  *Welch v. UNUM Life Ins. Co.*, 382 F.3d 1078, 1087 (10th Cir. 2004) (internal quotation marks omitted).  Accordingly, objective medical testing is not required to support a treating physician's opinion regarding fibromyalgia.  *Gilbert v. Astrue*, No. 06-1137, 231 F. App'x 778, 784 (10th Cir. April 11, 2007) (unpublished) (finding reversible error where ALJ relied on a lack of objective medical evidence to reject a treating physician's opinion regarding the plaintiff's limitations resulting from her fibromyalgia).  The Honorable Gary M. Parcell, United States Magistrate Judge of the Western District of Oklahoma, quoted the following description of fibromyalgia from Judge Posner of the Seventh Circuit Court of Appeals:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.

> There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.

*Hensley v. Astrue*, No. CIV-10-1029-F, 2011 U.S. Dist. LEXIS 91557 at *19–20 (W.D. Okla. July 26, 2011) (unpublished) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996)).

Here, the ALJ's decision suggests that she rejected Dr. Mahadevan's and Dr. Arnecke's opinions because they were "not supported by . . . objective medical evidence of record." Tr. 32. This reason alone does not constitute substantial evidence to reject the treating physicians' opinions on Plaintiff's limitations resulting from fibromyalgia. It was error to reject the treating physicians' opinions based on a lack of objective testing, especially where the record does seem to reflect the presence of the above listed symptoms associated with fibromyalgia. *See, e.g.,* Tr. 1105, 748–49, 1095–96; *see also Hensley*, 2011 U.S. Dist. LEXIS 91557 at * 20–21 (finding reversible error where ALJ rejected a treating physician's opinion on fibromyalgia for lack of objective testing and for failing to consider whether the record showed fibromyalgia symptoms).

I find that the evidence cited by the ALJ as establishing inconsistency between the treating opinions and the record either (1) is not actually inconsistent with the treating physician's opinions or (2) amounts to a mere scintilla of support. Although the "ALJ, [who is]

not a physician, is charged with determining a claimant's RFC from the medical record," *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (internal quotation marks omitted), the ALJ cannot "interpose [her] own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant," *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987). Such in the case here. The ALJ rejected two treating physician opinions, which were similar to each other, and which were the only medical opinions in the record. The ALJ did not enlist the service of a consultative examiner or the expertise of a medical advisor. Instead, she relied on her own assessment of the evidence. While this may not be an error per se, I find that under the circumstances of this case, it is error in this case because the ALJ's findings themselves are not supported by substantial evidence.

> B.  Plaintiff fails to show any error in the ALJ's credibility analysis.

Plaintiff argues that the ALJ misapplied the law when she evaluated the consistency of Plaintiff's statements with the ALJ's RFC because the regulations require that the ALJ evaluate Plaintiff's statements against the evidence of record. [Doc. 19] at 22 (citing 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4)). Moreover, she argues that the ALJ's "mere boilerplate" findings are insufficient. *Id.* (citing *Hardman v. Barnhart*, 632 F.3d 676, 679 (10th Cir. 2004)). The Commissioner responds that the ALJ's credibility determinations are entitled to deference and, in this case, are sufficient. [Doc. 24] at 13. I agree with the Commissioner.

The district court cannot re-weigh the evidence and can only review an ALJ's decision to ensure that she applied the correct legal standard and that her findings are supported by substantial evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "Credibility

determinations are peculiarly the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted).  Boilerplate language, however, is insufficient.  *Id.*  Instead, "it is well settled that [ALJs] must give reasons for their decisions." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).  Although ALJs do not have to discuss "every piece of evidence," *Clifton*, 79 F.3d at 1010, their "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler,* 68 F.3d at 391 (internal quotation marks and brackets omitted).

The Tenth Circuit Court of Appeals does not "reduce[] credibility evaluations to formulaic expressions [nor] require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (quoting *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000)).  Finally, where pain is the subject of the credibility dispute, the ALJ should consider such factors as:

> [1] the levels of medication and their effectiveness, [2] the extensiveness of the attempts (medical or nonmedical) to obtain relief, [3] the frequency of medical contacts, [4] the nature of daily activities, [5] subjective measures of credibility that are peculiarly within the judgment of the ALJ, [6] the motivation of and relationship between the claimant and the other witnesses, and [7] the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms. Tr. 33. However the ALJ also found that Plaintiff was not credible to the extent that her testimony conflicted with the RFC. Tr. 31. To support her determination, the ALJ made specific findings regarding Plaintiffs' credibility. *See* Tr. 33–34. For example, she found that Plaintiff had stopped her fibromyalgia medication without increased symptoms and did not require a cane for her knees. Tr. 33. Additionally, she found that Plaintiff inconsistently reported difficulty with her own personal care, while also reporting helping her boyfriend's mother with her dressing, bathing, and eating in the mornings. Tr. 33–34.

Plaintiff challenges each of these findings, but I am not persuaded. First, Plaintiff argues that the ALJ did not cite any evidence to support her finding that Plaintiff stopped her fibromyalgia medication without increased symptoms. [Doc. 19] at 23. However, it is not clear that the ALJ was required to *cite* to the portions of the record that supported her finding. *See* [Doc. 19] at 18. In any event, the record clearly supports the ALJ's finding.

The Commissioner points out that on July 12, 2011, Plaintiff reported to Dr. Ara that she had discontinued her Savella and Lyrica and was doing much better as a result. [Doc. 19] at 23; [Doc. 24] at 5 (citing Tr. 701). This medical record alone would constitute substantial evidence to support the ALJ's finding that Plaintiff discontinued her fibromyalgia medication, but there is even further support. Ironically, it was submitted by Plaintiff's counsel at Binder and Binder. *See* Tr. 303–05. On April 24, 2012, in preparation for the hearing before ALJ Mucerino, attorney Ortega submitted a list of Plaintiff's then-current prescription medications. Tr. 305.

15

The list contains neither Savella nor Lyrica.  Tr. 305.  Nevertheless, here, Plaintiff argues that the ALJ erred in failing to cite evidence that she had stopped Savella and Lyrica.   Furthermore, she seems to argue that she actually was taking Savella and Lyrica by pointing to records that were 27 months and 19 months older than the very list that her counsel submitted.  *See* [Doc. 19] at 18 (citing Tr. 317 (Dr. Chiang's note of January 4, 2010, indicating that Plaintiff was on Lyrica), 339–40 (Dr. Mahadevan's note of September 8, 2010, indicating that Plaintiff was on Lyrica and Savella)).  These arguments are disingenuous.  I am not persuaded.

With respect to the results of her knee surgeries, Plaintiff argues that simply because her knees were "stable" does not mean that her knees are asymptomatic or that she can work. [Doc. 19] at 23.  She also challenges the finding regarding her knees because she says that "there is evidence" that her knee problems persisted after her knee surgeries.  *Id.*  She further argues that the ability to perform activities of daily living ("ADLs") does not establish the ability to work.  *Id.* (citing *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988)).  I am not persuaded by Plaintiff's arguments.

Of course, I cannot reweigh the evidence regarding Plaintiff's knees.  Furthermore, the ALJ's findings regarding Plaintiff's knees and ADLs were not intended as the sole support for the ultimate finding of non-disability, as Plaintiff implies.  Rather, these findings correspond to several of the *Thompson* factors that the ALJ was required to consider in evaluating Plaintiff's credibility.  *See Thompson*, 987 F.2d at 489 (identifying factors, including, "[1] the levels of medication and their effectiveness, . . . [4] the nature of daily activities, [5] subjective measures of credibility that are peculiarly within the judgment of the ALJ,  . . . and [7] the consistency or

compatibility of nonmedical testimony with objective medical evidence."). I find that the ALJ's credibility determination is based on substantial evidence. Therefore, I find no error on the issue of credibility.

### IV.    Conclusion

Remand is required for proper consideration of Dr. Mahadevan's and Dr. Arnecke's opinions. If on remand, the Commissioner determines that these opinions are not accorded controlling weight, the service of a consultative examiner or the expertise of a medical advisor may be of assistance.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Plaintiff's Motion to Reverse and Remand Commissioner's Administrative Decision [Doc. 18] should be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Commissioner's final decision be **REVERSED**, and this case **REMANDED** for further proceedings in accordance with this opinion.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**